UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LINETEC SERVICES, LLC,<br><br>Plaintiff,<br><br>VERSUS<br><br>SHELTON ENERGY SOLUTIONS, LLC, and DEREK SNYDER,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIV. NO. 4:26-CV-8413 |

**DEFENDANT DEREK SNYDER'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR EXPEDITED DISCOVERY**

Defendant Derek Snyder files this Opposition to Plaintiff's Renewed Motion for Expedited Discovery (the "Motion," R. Doc. 30), as directed by the Court's Order (R. Doc. 22).

**STATEMENT OF THE CASE**

Linetec verified under oath that it ***already*** has the facts it needs to support a preliminary injunction, and it attached nearly two hundred pages of declarations, agreements, photographs, and overstated forensic findings to support that assertion. *See, e.g.*, (R. Doc. 1, ¶¶ 146-152) (stating in conclusory fashion, as one example, that "Plaintiff has shown a probable right of recovery from Defendants."). Linetec nevertheless, for a second time, asks the Court to set aside Rule 26(d) so it can serve unduly burdensome, disproportional, and voluminous discovery—including ***twenty*** overbroad written discovery requests that are not even tethered to preliminary injunction issues—on Snyder, an individual living in Louisiana, and require him to answer them under oath, prepare a privilege log, and produce documents, in single-page TIFF format with ***twenty-one*** metadata fields, all within just ***seven*** days. Linetec then wants Snyder and his counsel to travel to Houston, a 4.5-hour drive, within twenty days for an unlimited 4-hour deposition, all without a protective order governing sensitive information exchanged in discovery.

Linetec issues these demands to Snyder without establishing "good cause" for the broad and extensive (and entirely merits-based) discovery that it seeks, especially on an emergency clock, to argue for a preliminary injunction that it has already represented should issue. To highlight the unfairness of Linetec's unreasonable discovery demands, it cannot be overstated that some requests reach back ***eight years*** to the formation of an Employment Agreement that Snyder denies signing and others demand at least some records that sit in Linetec's own files. Alarmingly, Linetec also demands ***every*** call and text Snyder has made or received since March on any phone he uses, with no subject-matter limit at all. Linetec makes this intrusive request even though Courts routinely shut down such invasive discovery into mobile phones. *See Hardy v. UPS Ground Freight, Inc.*, No. 17-cv-30162, 2019 U.S. Dist. LEXIS 121277, at *6-11 (D. Mass. Jul. 22, 2019) (quoting *Riley v. California*, 573 U.S. 373, 403 (2014)) (collecting cases and refusing to allow mirror imaging of a cell phone not limited by search term, date, or identity of the sender or receiver, and recognizing that "modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'").

To substantiate its trade secret claims (which are currently subject of motions to dismiss by both Defendants, which further weighs against broad and expedited discovery[1]), Linetec's requests cover broad yet vague categories of "Linetec Information," leaving Snyder to search for and gather such information despite being at a loss as to what specific information is actually of consequence. And worse still, Linetec's discovery requests would effectively require forensic examination of computers Snyder does not own, with no protocol, no neutral examiner, and no protection for personal or privileged content.

[1] That a motion is pending which could dismiss entirely or require Linetec to more narrowly plead its trade secret claims—and identify its purported trade secrets with reasonable particularity—further militates against ordering expedited discovery in this procedural posture. Resolution of this motion to dismiss may necessarily shape the scope of what is discoverable.

Linetec's own conduct, moreover, belies the urgency it claims. It never sought a temporary restraining order, and it has not filed a memorandum of law in support of its request for a preliminary injunction that analyzes Rule 65 and applies its factors to the facts Linetec has verified. Linetec, moreover, improperly filed an "emergency" motion seeking expedited discovery before even serving anyone,[2] and it then waited two more weeks to serve Snyder. Linetec downplays this and other unfavorable facts—including no less than ten important allegations made entirely on information and belief—including that the only file accesses it actually identifies to support its trade secret claims occurred months before Snyder's resignation, involve files Snyder would access during the ordinary course of performing his job, and one of those files even carries a 2018 date in its name—highly suggesting that its value has long since gone stale. Meanwhile, while feigning fairness by claiming "mutuality," Linetec proposes to serve ***forty-two*** written discovery requests on two Defendants whom they suggest, together, should only be entitled to serve twenty-five written requests, while Linetec also seeks to take two depositions while Linetec would afford Defendants the opportunity to take a single deposition of a witness whom Linetec selects.

The broad, invasive, and burdensome discovery Linetec demands, on an expedited basis, is an aggressive litigation tactic designed to bully a former employee from engaging in lawful competition. Linetec bears the burden to obtain the emergency discovery it seeks. As explained more fully below, four of the five "good-cause" factors used to analyze requests for expedited discovery clearly weigh against Linetec, and the fifth, a pending injunction request, cannot carry the motion alone. The Renewed Motion therefore should be denied in its entirety.

---

[2] *See Source Prod. & Equip. Co. v. Schehr*, No. 16-17258, 2017 U.S. Dist. LEXIS 788, at *3-4 (E.D.La. Jan. 4, 2017) ("Plaintiffs cite no case where a court granted expedited discovery *ex parte* and the Court has not found any similar case where expedited discovery was granted *ex parte*.")

## NATURE OF THE PROCEEDINGS

Linetec's asserts that Snyder resigned from its employ on September 8, 2026. (R. Doc. 1, ¶¶ 1, 3). After waiting almost three weeks, Linetec then filed its Verified Original Complaint and Application for Preliminary Injunction and Permanent Injunction. (R. Doc. 1). Linetec did not seek a temporary restraining order.

Three days later, before serving the Complaint, Linetec filed an *ex parte* "Emergency" Motion for Expedited Discovery. (R. Doc. 2). Snyder opposed this original discovery motion on October 21, 2026. (R. Doc. 21). The Court struck that original motion, ordered the parties to confer, and permitted Linetec to file a renewed motion by November 6, 2026, that "shall address the issues raised in Defendants' responses." (R. Doc. 22 at 1-2). The Court set Defendants' response deadline for November 13, 2026, set a hearing for November 23, 2026, and stated it will set a briefing schedule on Linetec's preliminary injunction request thereafter. *Id.* at 2.

The parties conferred on November 3, 2026, and were unable to reach an agreement. (R. Doc. 30, p. 1). Linetec therefore filed the Renewed Motion on November 6, 2026. (R. Doc. 30). As to Snyder, the Renewed Motion asks the Court to order, within just ***seven*** days of its order, responses to ***twenty*** written discovery requests (twelve requests for production and eight interrogatories) that include, *inter alia*, broad access into Snyder's personal cell phone, production of all responsive documents in single-page TIFF format with ***twenty-one*** metadata fields and load files, and a privilege log. (R. Doc. 30, p. 10; R. Doc. 30-1, p. 10-12). Linetec also seeks to force Snyder to sit for a four-hour unlimited deposition in Houston within twenty days, which Linetec states should not count against the seven-hour or ten-deposition limits of Rule 30. (R. Doc. 30, p. 11). As if that were not enough, Linetec asks for open-ended authorization to conduct third-party discovery, and for a preservation order directed only at Defendants. (*Id.* at 11-12, 23-24). In

exchange, Lintec charitably suggests that both Defendants together may serve fifteen requests for production and ten interrogatories, and they may also take one four-hour deposition of a Linetec corporate representative chosen by Lintec. (*Id.* at 10-11).

## ISSUES PRESENTED

The two issues are: (i) whether Linetec has shown "good cause" to depart from Federal Rule of Civil Procedure 26(d) and, if so, (ii) what the permissible scope and timetable is for any such expedited discovery.

## LEGAL STANDARD

Rule 26(d)(1) provides that a party "may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," except by stipulation or court order. Fed. R. Civ. P. 26(d)(1). Courts in the Southern District of Texas "employ a good cause standard to determine when to exercise their authority to order expedited discovery." *Document Operations, L.L.C. v. AOS Legal Techs., Inc.*, No. 20-20388, 2021 U.S. App. LEXIS 25128, at *12 (5th Cir. Aug. 23, 2021). "In determining whether good cause exists, courts often consider (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Greenthal v. Joyce*, No. 4:16-CV-41, 2016 U.S. Dist. LEXIS 11132, at *4 (S.D. Tex. Jan. 29, 2016). "The burden of showing good cause is on the party seeking the expedited discovery." *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011).

## SUMMARY OF THE ARGUMENT

Linetec cannot satisfy its burden to show "good cause." While the Court has indicated a preliminary injunction hearing will be set, the other relevant factors (and Linetec's own self-



#112982297v6

defeating allegations) weigh ***against*** allowing expedited discovery, let alone the extensive, burdensome, and invasive discovery Linetec seeks to impose on Snyder (and Shelton) on an impossibly accelerated timeline. Linetec's Motion should be denied in its entirety.

## LAW AND ARGUMENT

### I. Linetec improperly seeks full, merits-based discovery.

Linetec states that its purpose for the Renewed Motion is to "uncover the full scope of the Defendants' unlawful conduct, preserve critical evidence before Defendants can destroy or conceal it, and prepare for the hearing on Plaintiff's request for preliminary injunctive relief." (R. Doc. 30, p. 7). But discovering the "full scope" of Snyder's allegedly unlawful conduct is not an appropriate topic for expedited discovery. *See Better Packages, Inc. v. Zheng*, No. 05-4477, 2006 U.S. Dist. LEXIS 30119, at *12-13 (D.N.J. May 17, 2006) (denying expedited discovery, noting that the requests at issue went "directly to the merits of Plaintiff's claims" and "would lead the parties conducting nearly all discovery in an expedited fashion under the premise of preparing for a preliminary injunction hearing"). And an examination of Linetec's proposed discovery requests reveals that their overriding purpose is to engage in overbroad and invasive merits-based discovery—*i.e.* ***not*** to prepare for the limited issues the Court must address under Rule 65 at a preliminary injunction hearing.[3]

#### A. Linetec's allegations in its verified Complaint are self-defeating.

Linetec's improper use of expedited discovery is shown by its own verified statements. Linetec verified under oath that it already has the facts to support an injunction. *See* (R. Doc. 1, ¶¶

[3] Snyder also notifies the Court that, in the action titled *Linetec Services, LLC et al v. AMP Utility Company, LLC et al.*, Case No. 4:26-cv-08224, Linetec is engaged in concurrent proceedings against more of its former employees and another competitor. This concurrent action, as well as the fact that Linetec has elected not to seek a temporary restraining order in this case, seems to indicate that Linetec is improperly using the Motion to obtain broad, expedited discovery to support its claims in the other action. This, of course, is not a proper purpose to obtain expedited discovery in this matter.

146-48). In addition to and supporting its verified allegations, Linetec attached nearly two hundred pages of documents, including declarations, agreements allegedly executed by Snyder as part of his Linetec employment (which Linetec now seeks additional copies of from Snyder), photographs, and cease and desist letters. Linetec's stated aim to "uncover the full scope of Defendants' unlawful conduct" can and should be pursued through merits-based discovery; it is not a proper purpose for ***expedited*** discovery, especially given Linetec's verified pleadings and representations that the Court has before it the information it needs to evaluate whether preliminary injunctive relief is appropriate.

**B. Linetec's trade secret requests ask Snyder to identify Linetec's trade secrets for it and seek information far in excess of what is necessary for a preliminary injunction hearing.**

Linetec states that the purpose of at least some of its expedited discovery is to probe "the alleged theft of trade secrets." (R. Doc. 30, p. 15). But alleging that ill-defined and vaguely pled "trade secrets" are at issue does not, without more, give Linetec a blank check to force Snyder to respond—especially on an expedited basis and with a motion pending that touches on those very allegations—to discovery untethered to any reasonably identified and plausibly alleged "trade secret." The Court should first require Linetec to plead what trade secrets it believes have been misappropriated with particularity. With a reasonable definition of the contours of its claims, the parties and the Court can evaluate the merits of these claims without the need for extremely broad and burdensome discovery. As the court in *StoneEagle Servs. v. Valentine*, No. 3:12-cv-1687-P, 2013 U.S. Dist. LEXIS 188512, at *9 (N.D. Tex. June 5, 2013) explained:

> The growing consensus seems to be in favor of requiring those plaintiffs bringing claims of trade secret misappropriation to identify, with reasonable particularity, the alleged trade secrets at issue…By requiring Plaintiffs to provide a list of trade secrets, the Court and Defendants will be able to more accurately determine relevant responses and appropriate objections. Plaintiffs will not be required to sift through mounds of irrelevant information produced by Defendants because they

> were uncertain as to what information was relevant. And Defendants will not be required to waste time guessing at the basis of Plaintiffs' claims.

As explained in Snyder's Motion to Dismiss,[4] (R. Doc. 29), Linetec's trade secret claim is based almost entirely on speculation, threadbare allegations, and the unremarkable fact that Snyder resigned and is now working for a new employer. Apart from inviting the Court to draw unwarranted inferences, the Complaint identifies as "trade secrets" only broad categories of information such as customer lists, pricing, bids, employee lists, compensation structures, "operational strengths and weaknesses," and "other confidential, proprietary, and trade secret information." (R. Doc. 1, ¶¶ 126-29, 143; R. Doc. 29, p. 19-21). But allegations that Snyder actually misappropriated any such broad categories of information relate solely to assertions that he plugged in certain external drives during his employment and accessed ***two*** files, one of which contains employee contact information and the other which is dated December 14, 2018. (R. Doc. 1, ¶¶ 57-59). There is no basis to permit broad discovery beyond those two discrete files that have been reasonably identified to date.

Without question, Linetec's proposed expedited discovery requests vastly expand the universe of responsive documents beyond its theft-of-information allegations. The Court need look no further than the defined term "Linetec Information," which purports to mean any document, file, or information "that originated with or was created by Linetec or Centuri, including any Documents, files, or information that reference Linetec or Centuri in their metadata," plus

[4] Seemingly attempting to shift its burden to show entitlement to expedited discovery, Linetec argues that Snyder "essentially seeks a discovery stay" and that his motion to dismiss raises "factual" issues that do not warrant one. (R. Doc. 30, p. 20-21). Both points are wrong. Snyder has not moved to stay anything. The question is whether Linetec has shown good cause to accelerate discovery before the Rule 26(f) conference, and the burden of that showing is Linetec's. Nor does Snyder's motion raise "factual" issues. It raises legal ones. Relevant here, whether the Complaint identifies trade secrets with reasonable particularity. (R. Doc. 29, p. 8). Linetec's third good-cause factor and a substantial share of its requests rest on the trade secret claims that Snyder has moved to dismiss for failure to identify any trade secret. The Court should not compel discovery into Linetec's "trade secrets" before deciding whether Linetec has adequately pled any.

everything the Employment Agreement calls "Proprietary and Confidential Information." (R. Doc. 30-1, p. 10). Under that definition, Snyder's pay stubs, his W-2s, emails Linetec sent him, and the Complaint itself are "Linetec Information."

Notwithstanding these issues, **Interrogatory No. 4** asks Snyder to "identify the Linetec Information" in his possession after his departure; **Interrogatory No. 5** asks whether Snyder used or disclosed any of it; and **Request No. 2** asks for documents sufficient to show all of it. (R. Doc. 30-2, p.10; R. Doc. 30-1, p. 11).

In addition to the foregoing problems, Linetec does not even need this discovery to prepare for a preliminary injunction hearing. It alleges, with serial numbers and timestamps, which three devices were connected to Snyder's Linetec laptop, and which two files were purportedly accessed improperly. (R. Doc. 1, ¶¶ 57-58). Indeed, Linetec already has had that forensic evidence since before it filed suit. If Linetec's theory is that those two files are "trade secrets" that Snyder misappropriated, it can present that theory at the hearing on the record it verified. Allowing Linetec to circumvent Rule 26(d) to seek effectively limitless discovery, covering vast categories of information, on an expedited and disproportional basis, is not appropriate in the context of a preliminary injunction hearing, especially given the threadbare nature of Linetec's allegations of Snyder's misappropriation. As the court in *United Biologics, LLC v. Am. Acad. of Allergy*, Civil Action No. SA-14-CV-35-OLG, 2014 LX 29136, at *16-17 (W.D. Tex. Mar. 20, 2014) instructed in a similar procedural posture:

> Plaintiffs' over-broad requests suggest that Plaintiffs are fishing for facts of an illegal agreement to replace asserted conclusions in their complaint. Instead of seeking limited discovery on specific, discrete, and recent events that could provide a basis for a preliminary injunction, Plaintiffs instead seek broad discovery on all relevant individuals and communications since 2010. If actionable evidence exists, certainly Plaintiffs would be more likely to win preliminary injunction with that evidence in hand…However, the mere

> possibility of Plaintiffs' ultimate success is insufficient to authorize such wide-ranging discovery. Plaintiffs' proposed discovery requests suggest that the actual purpose of the proposed expedited discovery is to uncover facts necessary to state a sufficient claim.

The same goes here. There is no proper purpose to deviate from the processes of ordinary discovery to prepare for a preliminary injunction hearing, especially on Plaintiff's threadbare pleadings and the limited "trade secrets" and "misappropriation" for which it already has presented evidence to the Court.

## II. The revised requests are not narrowly tailored, and compliance would impose an undue burden on an individual defendant, especially within seven days.[5]

"The subject matter of expedited discovery should be narrowly tailored in scope." *United Biologics*, 2014 LX 29136, at *12. The party seeking expedited discovery must demonstrate, considering "the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances," that "the need for expedited discovery outweighs the prejudice to the responding party, while showing that the scope of the requests are narrowly tailored to the necessary information sought." *Mode Glob., LLC v. Kuriger*, 350 F.R.D. 271, 274 (N.D. Tex. 2025) (cleaned up).

Linetec represents that its revised requests are "narrowly tailored" and that compliance will impose "minimal burden." (R. Doc. 30, p. 14, 16). The requests, addressed in more detail below, defy this characterization.

- **Request No. 8** (call and text logs). Linetec seeks documents "sufficient to show the call and text logs, from March 1, 2026 to present, from any Mobile Device used by You." (R.

[5] The Court should disregard Linetec's contention that Snyder "did not object to the breadth of Linetec's requested interrogatories." (R. Doc. 30, p. 22). Snyder's prior response – prepared as quickly as possible with Snyder not even having been served with a copy of the initial motion – described the requests it discussed as "a representative sampling of Plaintiff's fifteen Requests and eight Interrogatories." (R. Doc. 21, p. 5).

Doc. 30-1, p. 12). The request has no subject-matter or recipient-based limit. For an individual, it is a complete record of more than eight months of personal telephone activity: calls and texts to family, friends, physicians, and counsel, among others. Snyder already raised this objection to the original version of the request, (R. Doc. 21, p. 4), which was then at least limited to devices "used by You to perform work for Shelton or used to communicate with any Linetec employee or customer on behalf of Shelton." (R. Doc. 2-1, p. 12). Linetec's compromise in response to Snyder's earlier objection was to delete that meager limitation which broadened the Request. As previously argued, this Request is patently overbroad, intrusive, harassing, and serves no legitimate purpose. *See also, Henson v. Turn, Inc.*, No. 15-cv-01497-JSW (LB), 2018 LX 89740, at *14 (N.D. Cal. Oct. 22, 2018) (denying motion to compel production of cell phone for forensic imaging because such request "threatens to sweep in documents and information that are not relevant to the issues in this case, such as the plaintiffs' private text messages, emails, contact lists, and photographs.").

- **Request No. 9** (storage device connection history). Linetec seeks documents sufficient to show, by make, model, and serial number, every storage device connected to "any computer used by You to perform work for Linetec and/or Shelton" and/or "*the files accessed or copied from such*" devices. (R. Doc. 30-1, p. 12). This Request reaches not only the Linetec laptop, which Linetec possesses and has already examined (*See* R. Doc. 1, ¶¶ 57-58), but also any Shelton computer, which Snyder does not own or control. As to any personal computer, the information requested does not exist as a "document." It can be produced only by a forensic examination of the machine, performed within seven days, with no protocol, no neutral examiner, and no protection for personal, financial, medical,

or privileged content. This Request is extremely overbroad, burdensome, and intrusive even in ordinary merits discovery, let alone in the accelerated discovery Linetec seeks. *See, e.g., Kuriger*, 350 F.R.D. at 275 (stating that requests "for forensic images of all of Defendants' personal devices including cellphones" could easily be classified as improper).

- **Request No. 2 and Interrogatories Nos. 4 and 5** ("Linetec Information"). As discussed above, the defined term captures any information that originated with Linetec or Centuri or references either in metadata. Responding requires Snyder to review every file and account he has for anything connected to his employer of eight years and then to decide, without guidance from Linetec, which items Linetec would call trade secrets. Linetec's "sufficient to show" language does not change the nature of the burden placed on Snyder to search for and identify these documents.
- **Request No. 7** (customer communications). Prong (y) seeks documents sufficient to show Snyder's communications with any Linetec customer, including four named regional utilities, "since Your last day of employment with Linetec," on any subject. (R. Doc. 30-1, p. 12). A communication with an AEP or SWEPCO employee about a safety meeting, a mutual acquaintance, or a billing question is responsive.
- **Request No. 5** (communications "with any other Person"). The request reaches communications with Snyder's spouse, family, and friends about the Employment Agreement and his obligations to Linetec. (R. Doc. 30-1, p. 11). It implicates the marital communications privilege and has no connection to any preliminary injunction factor beyond what Request No. 1 and Interrogatory No. 1 already cover.

- **Request No. 10** (indemnity and fee agreements). Whether Shelton has agreed to indemnify Snyder or pay his fees has no bearing on likelihood of success, irreparable harm, the balance of hardships, or the public interest. It is collateral merits discovery at best.
- **Requests Nos. 11 and 12 and Interrogatories Nos. 7 and 8** (signed documents from 2018 and 2019, versions of the Employment Agreement, information factual basis for denial of contract formation and circumstances of execution). Aside from contravening Linetec's representation that its requests are now narrowed to January 1, 2026 forward (R. Doc. 30, p. 22), each document Linetec requests—copies of Snyder's Employment Agreement, onboarding and transmittal emails, electronic signature records, and tax/payroll forms—is (or at least should be) in Linetec's own possession as part of its standard record retention practices. There is no proper purpose, let alone "good cause," for Linetec to depart from ordinary discovery procedures to seek this dated information on an expedited basis. *See United States v. Abbott*, No. 1:23-CV-853-DAE, 2023 U.S. Dist. LEXIS 181302, at *8 (W.D. Tex. Aug. 3, 2023) (limiting requests for depositions where information sought from depositions was "easily accessible to the public or provided by [requesting party's] own representatives.").
- **Interrogatory No. 2** ("actual or prospective" customers). Snyder cannot identify Linetec's "prospective" customers. He no longer works there, and Linetec has not identified them. The request also demands six categories of detail for each contact, including "what was discussed," which is a deposition topic, not an interrogatory an individual can verify under oath in seven days.
- **Interrogatory No. 6** (devices and accounts). The request for every mobile device, phone number, and messaging account Snyder has used since January 1, 2026, with carrier and

dates, serves no purpose except to set up further demands on personal devices. There is no proper purpose for this Interrogatory in preparation for a preliminary injunction hearing.

- **"Documents sufficient to show" is not a limitation when the object is a category of communications.** Linetec's principal narrowing is the substitution of "documents sufficient to show" for "all." (R. Doc. 30, p. 21). That substitution might narrow a request for the terms of an agreement (e.g., **Request No. 1**), but it does not narrow a request for "Communications with any current or former Linetec employee" (**Request No. 6**) or "Communications with Shelton or any other Person" (**Request No. 5**). Documents sufficient to show a set of communications are the communications themselves.

- **Practical mechanics**. The Renewed Motion asks that Snyder respond to all twenty requests, assert objections, prepare a privilege log, verify interrogatory answers under oath, and produce all documents within seven days. (R. Doc. 30, p. 10). Rules 33 and 34 allow thirty days. Linetec's instructions require production as single-page TIFF images with OCR, load files, and twenty-one metadata fields per document. (R. Doc. 30-1, p. 6-7). That is a format for corporate litigants with e-discovery vendors. For an individual producing from a personal phone and email, it is an additional expense with no purpose. The proposed order incorporates the format by reference. (R. Doc. 30-5, p. 2).

- **Deposition**. Linetec asks that Snyder, a resident of Louisiana who worked for Linetec from Alexandria, Louisiana (R. Doc. 1, ¶ 8; R. Doc. 1-3 at 5), travel to Houston within twenty days for a four-hour deposition, and that the deposition not count against the seven-hour limit of Rule 30(d)(1) or the ten-deposition limit of Rule 30(a)(2). (R. Doc. 30, p. 11). Linetec reserves the right to depose him again. (*Id.*). Linetec concedes that third-party witnesses should be deposed where they reside. (*Id.* at 11-12). The same courtesy should

extend to an individual party defendant. If any expedited deposition is ordered, it should occur in Snyder's parish of residence or by remote means. And, if any deposition is ordered, it should be limited to two hours in duration, which is more than sufficient for the limited purpose of preparing for a preliminary injunction hearing. *See Mobile Med. Work Health Sols., Inc. v. Moore*, No. 1:24-CV-1219-RP, 2024 LX 123448, at *9 (W.D. Tex. Nov. 5, 2024) (noting that "Plaintiffs' request for four-hour depositions gives the Court pause" and that "two-hour depositions will provide Plaintiffs with sufficient information to prepare their preliminary-injunction motion."); *St. Louis Grp.*, 275 F.R.D. at 241 (denying leave to conduct expedited depositions and explaining that "the Court is hesitant to grant such a request because it is unclear if Defendants are seeking free-ranging depositions of these witnesses" or seeking the depositions purely relating to discrete issue).

For all the foregoing reasons, the second and fourth factors weigh heavily against granting the Renewed Motion.

**III. Linetec's conduct does not reflect the urgency it asserts, and the timing factor weighs against it.**

Linetec filed an "emergency" motion on September 28, 2026, before serving anyone, and then waited until October 12 to serve Snyder with the Complaint. (R. Doc. 2; R. Doc. 21 at 1-2). It has never sought a temporary restraining order. The events it describes as the core of its case, the Holiday Inn meeting and the resignation of approximately ninety employees, occurred before suit was filed. (R. Doc. 1, ¶¶ 42-48). The two file accesses Linetec identifies occurred on March 9 and July 7, 2026, months before Snyder's September 8 resignation, and one of the two files bears a December 2018 date in its name. (*Id.* at ¶ 58). These allegations are not indicative of a situation where urgent intervention is required and which might require departure from the ordinary rules of procedure to prevent irreparable harm before a hearing can be held.

At any rate, Linetec misapplies the fifth factor. Linetec argues that this factor is satisfied "because Plaintiff just filed this action." (R. Doc. 30, p. 17). But this factor evaluates how "far in advance of the typical discovery process the request was made" not to judge the plaintiff's diligence, but to evaluate how drastic a departure from the ordinary rules of discovery is being requested. Here, Snyder was served on October 12, filed his Rule 12 motion on November 5, and has not answered. No Rule 26(f) conference has occurred. Linetec asks that he be ordered to verify interrogatory answers and produce a privilege log within seven days of an order that could be issued as early as November 23. That is as far in advance of ordinary discovery as a request can be.

**IV. The remaining relief requested is unsupported.**

**Third-party discovery**. Linetec asks for authorization "to conduct reasonable expedited third-party discovery, to the extent reasonably necessary," with no cap, no notice requirement, and no description of the targets. (R. Doc. 30 at p. 23-24). A blank authorization for subpoenas is not "narrowly tailored," and Linetec has not even attempted to demonstrate how this discovery is necessary to preparation for the preliminary injunction hearing.

**Preservation**. Snyder does not oppose a reasonable preservation order, and such order should be mutual.

**Reciprocity**. Linetec describes its proposal as "mutual and proportionate." (R. Doc. 30, p. 9). But under it, Linetec serves twenty-six requests for production and sixteen interrogatories on two defendants and takes two depositions, while both defendants *collectively* may serve fifteen requests and ten interrogatories and take one four-hour deposition of a corporate representative whom Linetec selects. (*Id.* at 10-11). Snyder's defense at the hearing will turn on whether the Employment Agreement was executed, on what Linetec's forensic investigation actually shows,

and on what the former employees who attended the Holiday Inn meeting say happened there. If any expedited discovery is ordered, each defendant should receive its own set of requests, and Snyder should be permitted to depose the person who verified the Complaint, Linetec's human resources custodian for the 2018 agreement, or the examiner who prepared the forensic findings pleaded in paragraphs 57 and 58.

**Production format**. The proposed order requires production "in the form specified by Plaintiff." (R. Doc. 30-5 at 2). For the reasons stated above, any order should permit production in native or PDF format.

## CONCLUSION

For the foregoing reasons, Snyder respectfully requests that the Court deny Plaintiff's Motion.

Respectfully submitted,

*/s/ Joseph F. Lavigne*

Joseph F. Lavigne (La. Bar No. 28119 / SDTX: 559956)
Attorney in Charge
Connor H. Fields (La. Bar No. 39880 / SDTX:3990009)
**Jones Walker LLP**
201 St. Charles Avenue - 50th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8000
Email: jlavigne@joneswalker.com
cfields@joneswalker.com

***Counsel for Derek Snyder***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served through the Court's CM/ECF e-filing system on November 13, 2026.

*/s/ Joseph F. Lavigne*
Joseph F. Lavigne